1  ELIZABETH YANG (SBN 249713)
   YANG LAW OFFICES
2  199 W. Garvey Ave., Suite 201
   Monterey, CA 91754
3  Tel: (877) 492-6452
   Fax:(626) 988-8827
4  elizabeth@yanglawoffices.com
   Local Counsel for Plaintiff
5

6  GUSTAVO D. LAGE
   EL'AD D. BOTWIN
7  (*Pro Hac Vice* To Be Filed)
   SANCHEZ-MEDINA, GONZALEZ,
8  QUESADA, LAGE, GOMEZ &
   MACHADO, LLP
9  201 Alhambra Circ, Ste. 1205
   Coral Gables, Florida 33134
10 Tel.: (305) 377-1000
   Fax: (786) 304-2214
11 glage@smgqlaw.com
   ebotwin@smgqlaw.com
12

13 Attorneys for Plaintiff
   BUCK G. WOODALL
14

   DOUGLAS E. EDE
   (*Pro Hac Vice* To Be Filed)
   RUMBERGER, KIRK & CALDWELL
   80 Southwest 8th Street
   Suite 3000
   Miami, Florida 33130
   Tel.: (305) 358-5577
   Fax: (305) 371-7580
   dede@rumberger.com

   JAMES WES CHRISTIAN
   (*Pro Hac Vice* To Be Filed)
   Of Counsel To Plaintiff
   CHRISTIAN ATTAR
   1177 W Loop South
   Houston, Texas 77027
   Tel.: (877) 710-5170
   Fax: (713) 659-7641
   jchristian@christianattarlaw.com

15

16

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

17 | BUCK G. WOODALL, an individual;

18 |     Plaintiff,

19 | vs.

20 | THE WALT DISNEY COMPANY,

21 | a Delaware Corporation; WALT

22 | DISNEY PICTURES, a Division of

23 | The Walt Disney Company; WALT

    | DISNEY PICTURES AND

24 | TELEVISION, a Division of The

25 | Walt Disney Company; WALT

26 | DISNEY TELEVISION

    | ANIMATION, a Division of The

27 | Walt Disney Company; WALT

28 | DISNEY ANIMATION STUDIOS,

    | a Division of The Walt Disney

**Case No.:**

**COMPLAINT FOR:**

1) **COPYRIGHT INFRINGEMENT, 17 U.S.C. § 501(a);**

2) **CONTINUING COPYRIGHT INFRINGEMENT, 17 U.S.C. §§ 501(a),501(b);**

3) **WILLFUL COPYRIGHT INFRINGEMENT, 17 U.S.C. §§ 501(c);**

4) **INJUNCTIVE RELIEF FOR WILLFUL AND CONTINUING COPYRIGHT INFRINGEMENT, 17 U.S.C. § 502(a)**

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**

1   Company; DISNEY ENTERPRISES,
2   INC., a Division of The Walt Disney
    Company; BUENA VISTA HOME
3   ENTERTAINMENT, INC., a
4   California Corporation;
    MANDEVILLE FILMS, INC., A
5   California Corporation;, JENNY            **JURY TRIAL DEMANDED**
6   MARCHICK, An Individual, and
7   DOES 1-10, inclusive
           Defendants.
8

9

10

11        Plaintiff Buck G. Woodall, for his complaint against Defendants The Walt

12   Disney Company, Walt Disney Pictures, Walt Disney Pictures and Television, Walt

13   Disney Television Animation, Walt Disney Animation Studios, Disney Enterprises,

14   Inc., Buena Vista Home Entertainment, Inc., Mandeville Films, Inc.; Jenny

15   Marchick and DOES 1-10, claims and alleges as follows:

16                                  **THE PARTIES**

17        1.    Plaintiff Buck G. Woodall, who also goes by Buck Woodall, is a

18   resident of Baja, Mexico, and Taos, New Mexico. Referred to in this Complaint as

19   "Plaintiff" or "Woodall," Plaintiff is a professional writer as well as a producer and

20   artist.

21        2.    Defendant The Walt Disney Company is, and at all times mentioned

22   herein was, a Delaware corporation, qualified to do business in the State of

23   California, with its principal place of business in Burbank, California.

24        3.    Defendant Walt Disney Pictures is, and at all times mentioned herein

25   was, a corporation duly organized and existing under the laws of the State of

26   California, with its principal place of business in Burbank, California. Walt Disney

27   Pictures is a subsidiary of Disney Enterprises, Inc., and its primary business activity

28   is the development and production of motion pictures.


**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS** 1

4.    Defendant Walt Disney Pictures and Television is, and at all times mentioned herein was, a business and juridic entity the exact nature and form of which is currently unknown to Plaintiff, with its principal place of business in Burbank, California. Walt Disney Pictures and Television is referred to by the Defendants as a division of Walt Disney Studios, which is then referred to as a division of The Walt Disney Company. Walt Disney Pictures and Television's primary business activity is the creation of animated feature films and short films.

5.    Defendant Walt Disney Television Animation is, and at all times mentioned herein was, a business and juridic entity the exact nature and form of which is currently unknown to Plaintiff, with its principal place of business in Burbank, California. Walt Disney Television Animation is referred to by the Defendants as a division of Walt Disney Studios, which is then referred to as a division of The Walt Disney Company.  Walt Disney Television Animation's primary business activity is the creation of animated feature films and short films.

6.    Defendant Walt Disney Animation Studios is, and at all times mentioned herein was, a business and juridic entity the exact nature and form of which is currently unknown to Plaintiff, with its principal place of business in Burbank, California. Walt Disney Animation Studios is referred to by the Defendants as a division of Walt Disney Studios, which is then referred to as a division of The Walt Disney Company. Walt Disney Animation Studios' primary business activity is the creation of animated feature films and short films.

7.    Defendant Disney Enterprises, Inc. is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Delaware and qualified to do business in the State of California, with its principal place of business in Burbank, California. Disney Enterprises, Inc. is a subsidiary of The Walt Disney Company, and its primary business activity is the licensing of intellectual property rights related to motion pictures and television programs produced by its affiliates and/or subsidiaries.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  2

8.     Defendant Buena Vista Home Entertainment, Inc. is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Burbank, California. Buena Vista Home Entertainment, Inc. is a subsidiary of Disney Enterprises, Inc., and its primary business activity consists of distributing Digital Versatile and Blue-Ray discs of motion pictures produced by affiliated entities.

9.     At all times material hereto, The Walt Disney Company, Walt Disney Pictures, Walt Disney Pictures and Television, Walt Disney Television Animation, Walt Disney Animation Studios, Disney Enterprises, Inc., Disney+, Walt Disney Studios Motion Pictures, Disney Entertainment and Buena Vista Home Entertainment, Inc. (hereinafter collectively "Disney Entities") were and remain the *alter egos* of each other and are all dominated and controlled by Defendant The Walt Disney Company such that adhering to any separateness among the Disney Entities would sanction a fraud or promote injustice.  Indeed, during all relevant periods, these entities have morphed in and out of separate corporate forms to suit The Walt Disney Company's intention to obstruct and obscure its actual control over all revenues and expenses of these and other Disney Entities.   The *alter ego* relationships are established and proven based  at least on the following facts and circumstances:

a.  It is the express intention of The Walt Disney Company that none of these Disney Entities shall have a separate and independent existence, and in fact none of these entities are treated as having any separate independence apart from The Walt Disney Company.

b.  Instead, it is the intention of The Walt Disney Company that all of the Disney Entities exist for the sole and exclusive purpose of hiding documents, hiding evidence, hiding money and masking the *modus operandi* of The Walt Disney Company, during all times material

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  3

1  hereto, of stealing and pirating the intellectual property of others,
2  including Plaintiff.

3  c. The foregoing has been the intention of The Walt Disney Company
4  regarding all of its related Disney Entities for at least the last two
5  decades, with its public securities filings discussing or listing the
6  foregoing Disney Entities as having varying functions from time-to-
7  time which are inconsistent from day-to-day and from year-to-year,
8  thus forming a tapestry of confusion meant by The Walt Disney
9  Company to be in fact a tapestry of confusion done for unlawful means.
10  For example, with the purpose of hiding documents and concealing
11  theft, The Walt Disney Company and those people acting as agents
12  thereof have loosely used the term "Disney TV" throughout public
13  records and even during litigation regarding the case at bar (a) to at
14  times to refer to Disney Studios, (b) to at times to refer to Walt Disney
15  Pictures and Television, (c) to at times to refer to Walt Disney
16  Television Animation and (d) to at times to refer to none of the above.

17  d. The *alter ego* nature of the Disney Entities has continued in varying
18  litigation matters where The Walt Disney Company uses the *alter ego*
19  status of the foregoing entities to hide documents by alleging one
20  portion of the *alter ego* bevy of entities possesses documents where
21  other portions of the *alter ego* do not possess documents. This is done
22  intentionally by The Walt Disney Company to hide evidence and fail
23  and refuse to produce documents in response to court orders. Because
24  of the *alter ego* status, The Walt Disney Company's intention is to
25  avoid contempt or sanctions awards by claiming one *alter ego* has fully
26  complied with its legal obligations while knowing that other alter ego
27  entities have not complied.

28

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  4

e. In truth and in fact, there is no separateness in fact of any of the Disney Entities.

f. In truth and in fact, all of the Disney Entities have been dominated and controlled by The Walt Disney Company, at all times material hereto, to the point that all of the Disney Entities are the *alter ego* of The Walt Disney Company in innumerable ways, including (i) The Walt Disney Company controls bank accounts of the Disney Entities, (ii) The Walt Disney Company controls staff choices of the Disney Entities, (iii) The Walt Disney Company controls day-to-day operations of the Disney Entities, (iv) The Walt Disney Company controls staffing of the Disney Entities, (v) The Walt Disney Company controls choices and business purposes of each of the *alter ego* Disney Entities, (vi) The Walt Disney Company controls the decision whether or not any one or more of the Disney Entities shall continue in existence, (vii) The Walt Disney Company controls the receiving of credits for films and projects among the Disney Entities, (viii) The Walt Disney Company controls the hiring of counsel for each of the Disney Entities, (ix) each of the Disney Entities besides The Walt Disney Company are undercapitalized to justify their existence being treated as anything other than a shill of The Walt Disney Company, (x) the Disney Entities have commingled funds, shared bank accounts, intermingled finances, used funds of one of the entities to pay debts of the others without any rhyme or reason as discussed in the public filings of The Walt Disney Company, (xi) revenues and receipts from the Disney Entities' unlawful activities have been diverted in order to hide the truthful persons involved in the transactions and in order to hide the existence of money-flow for purposes of avoiding legal liability, (xii) the Disney Entities regularly fail to hold organizational meetings or otherwise conduct business as lawful juridic entities are required to do, (xiii) the Disney Entities lack

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS  5**

possession of required business and financial records as required by law and under general accepted accounting principles, (ix) the Disney Entities fail to maintain separate records while also failing to maintain separate identities when their schemes call for such separateness, (x) the Disney Entities have created public confusion regarding their separate existence through the use of confusing logos and email domains that blur the line of separateness between the Disney Entities, (xi) management and control of the Disney Entities overlaps to such an extent that key individuals hold roles in various Disney Entities, effectively running multiple entities as a single or combined business unit, (xii) staff are employed by all of the Disney Entities without clear distinctions in their roles or responsibilities, (xiii) all business decisions involving the Disney Entities favor the interests of the dominant entity, The Walt Disney Company, even to the detriment of the balance of the Disney Entities, (xiv) the Disney Entities Both operate out of the same physical locations without appropriate rental or lease agreements, (xv) the Disney Entities share equipment, assets, vehicles and intellectual property is used interchangeably without any documentation of any kind or even a trail of proof regarding where the initial development or ownership of such assets may lie, (xvi) the Disney Entities frequently advance money to or for the benefit of each other without properly documenting loans between the entities let alone guaranteeing the debts of the other, (xvii) The Walt Disney Company uses the Disney Entities to evade legal obligations and to mask legal exposure, (xviii) The Disney Entities are effectively operating as one enterprise but attempt to present themselves as separate to shield liability, to shield improper behavior and to create injustice and (xix) because of the foregoing, the public perceives the Disney Entities as one entity because of indistinct branding or lack of transparency as well as the public perceptions

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  6

created by the Disney Entities' own branding and internet-based campaigns and presentations.

g.  Through the unprecedented confusion created by the innumerable trade names given to the various Disney Entities and as a result of the foregoing interrelationships and wrongdoing, The Walt Disney Company has the intention of getting away with theft, secretion of evidence and other wrongdoing by confusing the issues and hoping for obfuscation and delay as a business stratagem to insulate against its theft and bad faith.

10.    Defendant Mandeville Films, Inc. was, and at all times mentioned herein, a California corporation with its principal place of business in Los Angeles County, California. Mandeville Films' primary business activity was the development and production of motion pictures. Mandeville Films, Inc. is referred to hereinafter as "Mandeville."

11.    Defendant Jenny Marchick is an individual who resides in Los Angeles County, California. She is referred to hereinafter as "Marchick."

12.    Plaintiff is ignorant of the true names and capacities of Defendants named in this complaint as DOES I through 10 and sues said Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and on that basis, alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint, and that Plaintiffs damages as alleged in this Complaint were proximately caused by their conduct, or that such Defendants ratified or participated in the conduct causing such damages.

13.    At all times material hereto, each of the Defendants named in this Complaint was acting as the agent, employee, independent contractor, representing partner, or joint-venturer of the remaining Defendants with respect to the conspiratorial scheme set forth herein. In doing the things set forth in this Complaint, each of the Defendants was further acting within the course and scope of that

relationship. Each of the Defendants in this action willfully gave consent to, ratified, aided-and-abetted and authorized the unlawful acts of the remaining Defendants as alleged in this Complaint.

14.    Defendants, and each of them, are individually sued as participants and aiders and abettors in the wrongful conduct complained of in this Complaint, and the liability of each Defendant arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained of herein with a purpose of furthering the Defendants' overall wrongful objectives.

15.    During their engagement in the wrongful conduct alleged in this Complaint, each of the Defendants acted in concert with one another, intentionally orchestrating and executing a calculated scheme designed to defraud, injure, and irreparably harm Woodall. The Defendants, acting as co-conspirators and joint venturers, participated in a fraudulent enterprise that encompassed the theft, misappropriation, and extensive exploitation of Woodall's copyrighted materials, intellectual property, and trade secrets as set forth in this Complaint. This conspiracy was marked by a web of coordinated actions, including but not limited to: deliberate misrepresentations to deceive Woodall; systematic concealment of critical evidence; covert meetings to plan their infringing activities; and the distribution of stolen materials across various platforms, thereby maximizing their illicit profits at Woodall's expense.

16.    The Defendants' conspiracy extended to publishing a new infringing motion picture right under this Court's jurisdiction while intentionally disregarding and actively violating this Court's orders compelling the disclosure of relevant documentation and information, including that associated with *Moana 2*. In furtherance of their scheme, the Defendants not only failed to produce the mandated evidence as ordered by this Court, but also engaged in efforts to secrete, destroy, or alter incriminating documents and digital files to further secrete the evidence. These acts were undertaken with the singular purpose of obstructing justice and evading

accountability, all while reaping billions of dollars in unlawful profits, and none of which could have been achieved without the carefully planned conspiracy alleged herein as well as the carefully implemented domination and control by The Walt Disney Company over the entire process through its *alter ego* control over the Disney Entities.

17.    In addition, the conspiracy included fraudulent inducement and the exploitation of third parties, including distributors, marketers, and digital platforms, to facilitate the dissemination of the infringing works in violation of the Copyright Act.  The Defendants actively coordinated their actions, sharing resources, proprietary technologies, and insider knowledge to ensure the success of their scheme.  The conspiracy also featured clandestine communications through encrypted channels, fake shell companies to launder proceeds, and the deliberate falsification of corporate records to conceal their wrongful activities.

18.    The Defendants' conduct further involved threats, coercion, and intimidation aimed at silencing whistleblowers, employees, and any individuals who might expose their infringing activities.  The conspiracy also included efforts to manipulate public perception, including issuing false press releases, leveraging industry relationships to stifle competition, and employing sophisticated public relations strategies to undermine Woodall's credibility.

19.    This concerted and highly orchestrated action among the Defendants constitutes a civil conspiracy to inflict deliberate harm upon Woodall, according to proof.  Their actions reflect a flagrant disregard for intellectual property rights, the rule of law, and this Court's authority.  This conspiracy fully justifies a finding of willful copyright infringement, an award of enhanced statutory damages, and injunctive relief pursuant to 17 U.S.C. §§ 501(c) and 502, as well as other equitable relief sought in this Complaint.

## JURISDICTION AND VENUE

20.    This Action arises under Acts of Congress relating to copyright infringement under 17 U.S.C. §§ 501, *et seq*.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  9

21.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States, and 28 U.S.C. § 1338(a), which grants exclusive jurisdiction to federal courts over claims arising under the Copyright Act.

22.    The Court has personal jurisdiction over all Defendants, and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law, because, *inter alia*: (a) all corporate Defendants named in this Complaint maintain their principal place of business in Los Angeles County, California; (b) all individual Defendants named in this Complaint reside in this district; and (c) the acts and omissions giving rise to the claims alleged herein occurred within this district, where the individual Defendants were employed by the corporate Defendants.

## NATURE OF THE CASE

23.    This case arises from a two-decade-long scheme masterminded by Marchick but ultimately joined in with malice and for profit by all Defendants pursuant to the aforementioned conspiracy described in this Complaint.  The scheme started out as a plan by Marchick to support her thirst to gain success in her desired career in the movie industry, at all costs, by working with the Defendants to steal all the components of Plaintiff's Copyrighted Materials, as that term is defined in this Complaint. This theft resulted in what would eventually become one of the most unique and profitable animated film franchises in motion picture history revolving around Plaintiff's Copyrighted Materials and directly resulting in the Disney franchise known as *Moana*. The core of the entire *Moana* franchise is Plaintiff's Copyrighted Materials. The *Moana* franchise resulted in the motion picture *Moana I,* which Disney ultimately produced and released theatrically in November 2016. It then resulted in the distribution of *Moana I* into secondary markets throughout 2017 and 2018, including home distribution.  And the franchise then most recently resulting in a sequel called *Moana 2,* released within 30 days of filing this Complaint. This *Moana* franchise, which was developed off the back of Plaintiff's

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  10

Copyrighted Materials and while the Defendants intentionally stole and utilized these Copyrighted Materials acting as if the Defendants themselves owned them, has garnered for the Defendants more than $10 billion in profits as of the date of filing this Complaint.

24.    The theft scheme has now been largely admitted to by the Defendants in the pending case styled *Buck G. Woodall v. The Walt Disney Company, etc. et al.,* Case No. 2:20-cv-03772-CBM-E (hereinafter "*Woodall v. Disney I*").  For example, in *Woodall v. Disney I,* while dismissing some defendants on statute of limitations grounds solely involving the 2016 ***theatrical*** release of *Moana I*, this Court found as a matter of law that Defendant Jenny Marchick — who had received Plaintiff's Copyrighted Materials in confidence from Plaintiff nearly 20 years ago — admitted under oath that she (Marchick) provided the Copyrighted Materials "to ... an individual at Disney Animation TV" prior to the beginning of the development of the 2017 *Moana* motion picture.  *Id.,* Dkt. No. 558, page 19.  The Court also found triable issues of fact regarding both substantial similarity and striking similarity between Plaintiff's Copyrighted Materials, on the one hand, and *Moana I,* on the other hand. *Id.,* at page 22, n. 15, and page 24.

25.    Although the Defendants were subject to two of this Court's orders in *Woodall v. Disney I*  compelling the Defendants to produce ***all*** materials involving or relating to the character named Moana, and although the Defendants stipulated before this Court on August 22, 2023 to produce all such materials, the Defendants — and each of them — defrauded this Court and violated the two orders of this Court by suppressing hundreds of thousands of pages of responsive materials regarding the character Moana's development in connection with a brand new motion picture called *Moana* 2, which film was theatrically released on November 26, 2024.  At the time the Defendants intentionally defrauded Plaintiff and this Court while knowing that the responsive documentation it was secreting utilized all of Plaintiff's Copyrighted Materials, the Defendants repeatedly represented that they had produced all responsive documents regarding the character Moana when in truth and

in fact they knew that they were secretly developing images and documents daily that were continuing to infringe upon Plaintiff's Copyrighted Materials. According to proof, the foregoing illegal conduct by the Defendants has been identical to the willful plan of infringement that they have utilized for the past two decades regarding Plaintiff's Copyrighted Materials in launching the *Moana* franchise. The foregoing fraud on this Court by the Defendants resulted from the Defendants' willfully malicious motives, according to proof, leading to enhanced damages pursuant to applicable law.

26.   Plaintiff Buck G. Woodall now proceeds with this Complaint to recover the billions of dollars of profit realized by the Defendants' decision to create unauthorized derivative works of the Copyrighted Materials, without permission and indeed utilizing actual malice and bad faith, in violation, *inter alia,* of 17 U.S.C. § 106(2) which expressly provides that the copyright owner "has the exclusive rights ... to prepare derivative works based upon the copyrighted work." Because this Court has already found as a matter of law that Woodall is the owner of the Copyrighted Materials — *Woodall v. Disney I,* Dkt. No. 558, page 16, Plaintiff now proceeds with his causes of action for violations of the Copyright Act and presents the following allegations.

## ALLEGATIONS COMMON TO ALL COUNTS

### *Moana I*

27.   Disney's *Moana I* was produced in the wake of Woodall's delivery to the Defendants of virtually all constituent parts necessary for its development and production after more than 17 years of inspiration and work on his animated film project with titles over the years ranging from "*Bucky*" to "*Bucky the Wave Warrior*" (hereinafter "*Bucky*"). This project was inspired by Woodall's unique exposure to Polynesian culture -- including living on Hanalei Bay for approximately a decade -- as well as his expenditure of more than $500,000.00 in personally creating, writing and developing a theatrical motion picture package associated with *Bucky.*

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  12

Woodall's purpose in constructing the package was to gear it toward presentation to major constituents and distributors within the animated movie industry. What Woodall ultimately developed included major and unique themes, a complete screenplay, distinctive character development and illustrations, as well as comprehensive budgets for an animated film that was extraordinarily singular in plot, sequence of events, themes, dialogue, mood and pace, settings and characters. All of these features developed by Woodall with respect to *Bucky* were qualitatively and quantitatively unique and distinctive, are referred to in this Complaint as the "Presentation Package" and are comprised substantially of the materials a true and correct copy of which are appended hereto as Exhibit "A."

28.     In addition to registering both *Bucky* and the Presentation Package with the Writers Guild of America, as is customary for professional writers in the motion picture industry, portions of the Presentation Package were also granted Federal Copyright protection by the United States Patent and Trademark Office in 2004 and updated in 2014, containing approximately 203 pages of materials. This Court has already ruled as a matter of law that Plaintiff indeed owns all of these copyrighted materials, true and correct copies of which are collectively appended hereto as Exhibit "B" and are referred to in this Complaint as "Copyrighted Materials." The "Copyrighted Materials" also include a trailer Woodall delivered to the Disney Entities, which is copyrighted and owned by Woodall and has been infringed on in connection with the Defendants' conspiracy to publish portions of its Moana franchise, including the motion picture known as *Moana 2.*

29.     Woodall initially began interactions with Marchick regarding *Bucky* in the early 2000s. Woodall was always careful to protect his ownership over all of his intellectual property, trade secret ideas and materials developed pursuant thereto, including, but not limited to, all elements of the Presentation Package.  From the first time he shared his Copyrighted Materials with Marchick, Woodall insisted that Marchick commit to maintain the materials in confidence and Marchick consented to do so.  Plaintiff's filings with the Copyright Office were done in order to assure

1    his ultimate protection over his Copyrighted Materials regardless of anybody's

2    nefarious intentions toward what had become his life's work.

3         30.    From and after October of 2003, Woodall provided in confidence to

4    Marchick extremely large quantities of intellectual property and trade secrets

5    associated with *Bucky*. At all times thereafter, and totally ignorant of Marchick's

6    and the Defendants' fraudulent scheme set forth in this Complaint, Woodall

7    reasonably believed Marchick to be acting in good faith and respecting the

8    ownership by Woodall of his intellectual property and trade secrets associated with

9    *Bucky*.

10        31.    In or about January of 2005, following Marchick's prodding of Woodall

11   to deliver more material regarding *Bucky* and her repeated assurances that she could

12   and would assist in commercializing the film, Woodall completed all or substantially

13   all of the content of what is attached hereto as Exhibit A as the Presentation Package

14   and delivered it to Marchick at Mandeville's offices located within the Disney studio

15   facilities in Burbank, California. Marchick was employed at the time by Mandeville,

16   which had a "first look" deal with Disney, which is a favored and highly sought-

17   after relationship from the standpoint of an independent producer for the possible

18   production and distribution of a theatrical feature product by a major studio. At the

19   meeting, Marchick told Woodall in words or substance that she would get the

20   Presentation Package "to the right people."

21        32.    After Marchick's review of the Presentation Package shortly following

22   the January 2005 meeting, Marchick prodded Woodall to produce and provide to

23   Mandeville an animated trailer of the Presentation Package by continuing to assure

24   Woodall that Marchick could and would obtain successful commercialization of

25   Woodall's ideas. During the two years that followed this inducement, Woodall

26   worked on and completed a comprehensive animated trailer at his own cost and

27   expense and Woodall then provided the trailer to Marchick and Mandeville in or

28   about the middle of 2008.  This trailer is copyrighted and owned by Woodall,

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  14

registered as copyright-protected material pursuant to the laws of the United States of America.

33.    Later during this period, at Marchick's prodding and inducement, Woodall also provided Mandeville and Marchick, in addition to an updated fully animated concept trailer, with storyboards on a DVD, which at the time contained background image references, story development, character illustrations, executive summary, and other constituents to develop the film.

34.    Based upon Marchick's continuing fraud, deceit and prodding him to deliver script materials, Woodall then worked on completing his script for submission to Marchick. Because of the intimate association with Disney regarding the development of the project, Woodall was assisted by Kurt Weldon, a writer affiliated with Disney, in completing the animated trailer. Always vigorous in protecting his intellectual property and trade secrets associated with Bucky, Woodall required Weldon to also sign a confidentiality agreement before providing Weldon with access to and the right to work on the Bucky script. Weldon signed the confidentiality agreement and provided it to Woodall through Buck Creations Multimedia on November 18, 2006. After Woodall and Weldon completed the final draft script in July 2011, Woodall sent Marchick a copy of it while she was then working as a "Consultant, Original Movies" at Disney. Unbeknownst to Woodall at the time, the script Marchick prodded Woodall to complete was virtually the final cog in the Defendants' conspiratorial machinery of stealing Bucky and developing Moana.

35.    During this period, Marchick secretly provided the Copyrighted Materials to the Disney Defendants. On the eve of the release of *Moana I,* Marchick told Plaintiff that she was unaware of whether the Copyrighted Materials were ever provided to anyone and indeed Marchick claimed in writing that she was unsure whether these materials ever "made it beyond" her desk. Marchick's representation to Woodall in this regard was knowingly false at the time it was made and was

insinuated by Marchick in order to protect the Defendants' desires to exploit a franchise surrounding their theft of the Copyrighted Materials.

36.    The Disney theatrical animated feature film *Moana* was released into theatrical distribution in November 2016, depicting similarities to the trade secrets and intellectual property of the Presentation Package materials that are extraordinarily stark and greater than most every reported example of copyright infringement in U.S. history. With incredible and often breathtaking scope and breadth, the similarities in the scripts and all materials surrounding the two stories include, but are not limited to, the following duplications which could not possibly have been accidental or innocent in derivation:

    a.  Both *Bucky* and *Moana* tell the story about a teenager who defies parental warnings and embarks on a dangerous voyage across Polynesian waters to save the endangered land of a Polynesian island;

    b.  Both *Bucky* and *Moana* celebrate what the *Bucky* script refers to as the Polynesian people's "unfettered access to the sea [as] a native right;"

    c.  Both *Bucky* and *Moana* involve protagonists who learn about ancient Polynesian culture during a sea voyage;

    d.  Both *Bucky* and *Moana* contain a recurring theme of the Polynesian belief in spiritual ancestors, to wit: ancient spirits manifested as animals which guide and guard the living;

    e.  Both *Bucky* and *Moana* have as the backdrop an ancient Polynesian village with its inhabitants weaving baskets, fishing, pounding taro, and telling stories of ancient Polynesia;

    f.  Both *Bucky* and *Moana* comprise an opening scene which is a flight into an island;

    g.  Both *Bucky* and *Moana* have as a part of its opening sequence the protagonist being as a baby at the Polynesian beach facing destiny;

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  16

h.  Both *Bucky* and *Moana* involve a journey by the main character which starts with a turtle;

i.  Both *Bucky* and *Moana* involve plots where a symbolic necklace plays a special role;

j.  Both *Bucky* and *Moana* incorporate the concept of sea navigation by the stars;

k.  Both *Bucky* and *Moana* involve a main character who specifically encounters a goddess-like creature emanating from volcanic lava;

l.  Both *Bucky* and *Moana* involve a main character who encounters a demigod with a giant hook and tattoos;

m.  Both *Bucky* and *Moana* introduce the demigod in a dark cave;

n.  Both *Bucky* and *Moana* involve the demigod turning into different creatures including a Polynesian hawk and a shark;

o.  Both *Bucky* and *Moana* involve characters shapeshifting into bugs;

p.  Both *Bucky* and *Moana* involve the main character surviving a storm on the sea;

q.  Both *Bucky* and *Moana* involve a protagonist who also faces an army of small-armored warrior characters;

r.  Both *Bucky* and *Moana* involve the protagonist encountering a whirlpool in the ocean;

s.  Both *Bucky* and *Moana* involve a giant creature that is concealed within a mountain and actually lies down and takes the mountain's shape;

t.  Both *Bucky* and *Moana* conclude with the teenager returning as a hero to the parents on the island, having saved it from destruction; and

u.  Both *Bucky* and *Moana* contain striking similarities in the animated visual depictions used in the productions, including, by way of example, the face of the goddess of creation/lava creature and the location and surroundings of the island.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS** 17

37.    In *Woodall v. Disney I,* the Defendants consistently — in writing on innumerable occasions and in filings before the Court — refused to produce any documents or information of any kind other than documents or information possessed by Walt Disney Animation Studios.  This Court repeatedly ordered the Defendants, and each of them, to produce all responsive documents which included, *inter alia,* all information and materials regarding the character Moana. This Court refused to hold the Defendants accountable in any way, shape or form and permitted the Defendants to only conduct a full search with respect to the archives of Walt Disney Animation Studios for documents. This Court made such rulings on numerous occasions so repetitive as to be significant in the context of any litigation (far more than simply a couple of court orders).  Despite protecting the Defendants' **stated** desire to not search for documents, however, this Court was unable at summary judgment to make any ruling other than that the issues of substantial similarity, striking similarity and access must go to the jury because they presented triable issues of fact as a matter of law. *See generally,* Dkt. No. 558.

38.    Although this Court's summary judgment order in *Woodall v. Disney I* dismissed, on statute of limitations grounds, all claims regarding the initial theatrical distribution of *Moana I* that took place in late 2016, Plaintiff had predicted in that matter and in the operative complaint therein that the Defendants' intention all along was to develop a longstanding, multi-billion-dollar franchise utilizing the Copyrighted Materials. In other words, the case at bar was fully predicted by Plaintiff in the operative complaint in *Woodall v. Disney I*, and no judicial sanction of a party openly hiding responsive documents in discovery can fully get around the detailed provisions of the Copyright Act, including its protection of a Copyright owner like Plaintiff so that his right to prepare all derivative works is sacrosanct.  The carefully laid plans of the Defendants and others associated with *Woodall v. Disney I* have been substantially arrested by the new release of *Moana 2.*

### *Moana 2*

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  18

*39.*    On November 26, 2024, Defendants — in furtherance of their conspiracy to maximize the profits from the theft of Plaintiff's Copyrighted Materials and after suppressing the truth from this Court despite **multiple** orders by this Court compelling production, after contempt proceedings and after defrauding this Court by representing that all documents appertaining to the character Moana had been produced — effectuated the theatrical release of the motion picture known as *Moana 2.* Promotional materials, trailers, and plot summaries for the film admit that the sequel continues to misappropriate Plaintiff's Copyrighted Materials, characters, and plot devices as well as all other motifs from Plaintiff's Copyrighted Materials that have been part and parcel of *Woodall v. Disney I.*

40.    Specifically, "*Moana 2*" blatantly copies core elements of Plaintiff's works, presenting strikingly similar themes, character journeys, and imagery as those set forth in the Copyrighted Materials. These similarities in *Moana 2*, which go beyond superficial resemblance and indicate direct infringement, include but are not limited to the following:

  a.  Moana once again embarks on a daring voyage on an outrigger canoe, a central motif of Plaintiff's Presentation Package as included in the Copyrighted Materials;

  b.  Moana once again voyages across the vast Oceanic waters accompanied by a crew, mirroring Bucky's own journey in Plaintiff's Copyrighted Materials;

  c.  This time, Moana's companions on the canoe include both the pig and the rooster, an image uncannily similar to one found in Plaintiff's Copyrighted Materials depicting a similar dynamic and actually representing even a more stark similarity than the infringement represented by *Moana I*;

d. Moana sets out in search of an ancient and mysterious island, echoing the central quest in Plaintiff's work as protected by Plaintiff's Copyrighted Materials;

e. Moana undertakes a mission to break a curse, directly paralleling narrative elements that Plaintiff uniquely developed in his Presentation Package and as set forth in the Copyrighted Materials;

f.  During her journey in Moana 2, Moana and her crew are sucked into a perilous whirlpool-like oceanic portal, another dramatic and unique device-imagery found in Plaintiff's materials that could not possibly have been  developed by chance or without malicious intentions on the part of the Defendants;

g. Moana and her crew experience profound connections with their ancestors, a recurring and spiritual theme central to Plaintiff's story;

h. Moana and her crew once again encounter the "kakamora," a tribe of tiny armored warriors whose depiction aligns with the small warrior characters described in Plaintiff's Presentation Package;

i. Moana engages in time-travel, both to the past and to see her ancestors as well as to a predicted future;

j. Moana shapeshifts several times into tiny bugs;

k. Moana is shown climbing a mountain as part of her journey, yet another visual and thematic element originating in Plaintiff's materials;

l. Moana continues to wear the symbolic necklace central to her character and actually expands the timing and usage of the necklace, further infringing on Plaintiff's concept of a significant artifact with spiritual and narrative importance; and

m. Displaying demonstrating overt defiance toward this Court's jurisdiction and the Copyright Act, the Defendants even installed in *Moana 2* the imagery of surfing the waves, identical in motif and imagery to the story depicted in *Bucky the Wave Warrior*.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS** 20

41.    In addition to the foregoing specific instances of copying, *Moana 2* perpetuates the wholesale appropriation of other significant elements from Plaintiff's work, including:

    a.    The integration of Polynesian mythological figures into the plot, in ways that align with Plaintiff's specific depiction of such figures in his Presentation Package.

    b.    The continued portrayal of the ocean as a sentient spirit, a concept distinctly developed and copyrighted by Plaintiff.

    c.    The use of shapeshifting as a recurring narrative and visual device, an idea originally and uniquely articulated in Plaintiff's work.

42.    The foregoing elements, taken collectively, represent an egregious pattern of infringement, as Defendants now knowingly and willfully persist in exploiting Plaintiff's Copyrighted Materials and intellectual property to their own financial benefit.

43.    Plaintiff has suffered and will continue to suffer irreparable harm, including loss of recognition, financial damages, and the emotional toll of witnessing the systematic exploitation of his original creations.

44.    Defendants' production and promotion of *Moana 2* constitute ongoing acts of copyright infringement, appropriating Plaintiff's original works without authorization or compensation.

45.    The Defendants' inclusion into *Moana 2* of the elements detailed above demonstrates deliberate and intentional copying and adaptation of Plaintiff's materials. Defendants acted with full knowledge of Plaintiff's rights, as already explicitly set forth and demonstrated from an evidentiary standpoint in *Woodall v. Disney I.* Despite this, Defendants have brazenly chosen to proceed in clear defiance of their legal obligations. This calculated disregard reflects an apparent belief by the Defendants that their actions will somehow be shielded by this Court, a perception likely rooted in the history of judicial outcomes favoring Disney in Los Angeles

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  21

County, California. Such conduct not only underscores Defendants' lack of respect for the judicial process but also suggests an expectation of insulation from accountability—a belief that threatens the very integrity of copyright protections and the principles of fairness in this forum.

46. Plaintiff has suffered substantial damages, including lost opportunities for financial gain, diminished value of his intellectual property, and profound reputational harm as a result of Defendants' actions.

## **FIRST CAUSE OF ACTION**

### **(Copyright Infringement, 17 U.S.C. § 501(a) - Against All Defendants)**

47. Plaintiff incorporates paragraphs 1 through 46 of this Complaint as though fully set forth at length.

48. Plaintiff has duly complied with all statutory formalities of the Copyright Act of 1976 with respect to the registration of protectible elements of *Bucky,* of the Presentation Package and of the underlying work, all of which are the subject of U.S. Registration No. VAu 000624809 and PAu 003749546, collectively Exhibit "B" hereto and of all Copyrighted Materials, according to proof.  (All such protected materials are referred to in this Complaint as "Copyrighted Materials.")

49. On November 26, 2024, this Court found as a matter of law that Plaintiff owns all of the Copyrighted Materials and that the Defendants own no portion of the Copyright Materials, *Woodall v. Disney I,* Case No. 2:20-cv-03772-CBM-E, Dkt. No. 558.

50. The foregoing acts by Defendants in and with respect to the theatrical release of *Moana 2,* as specifically set forth in this Complaint, constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's copyrighted work, as reflected in U.S. registration no. VAu 000624809 and PAu 003749546, which infringe Plaintiff's exclusive rights in violation of the Copyright Act of 1976, 17 U.S.C. § I01 et seq.

51.    Defendants' infringing works in and with respect to *Moana 2* copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's copyrighted work.

52.    Such infringement of Plaintiff's copyrighted work includes Defendants' copying of the literal elements of Plaintiff's copyrighted work including the major themes and ideas, script outline, character development, illustrations and budgets.

53.    Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Materials, and did so willfully, maliciously and intentionally.

54.    Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

55.    As a proximate and foreseeable result of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

56.    The inclusion of signature elements of Plaintiff's Copyrighted Materials greatly enhances the financial value of Defendants' infringing products associated with *Moana 2*.

57.    As a result of Defendants' copyright infringement set forth in this Cause of Action, Plaintiff is entitled to his actual damages and profits in the sum of more than $4 billion, according to proof either upon entry of summary judgment in Woodall's favor or at trial before a duly impaneled jury.

58.    From the date of first production of Defendants' infringing works regarding *Moana 2*, the Defendants have infringed Plaintiff's copyright interests in his copyrighted work, including by: (a) authorizing the reproduction, distribution and sale of the infringing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c)

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  23

participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial illegal use of Plaintiff's copyrighted work alleged in this Complaint.

59.    With knowledge of the aforementioned infringement, each Defendant has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others separate and apart from their *alter ego* and conspiratorial status alleged in detail in this Complaint.

60.    Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

61.    The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed work and related products.

62.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of Defendants' infringing products, irreparable injury that cannot fully be compensated for or measured in monetary terms; Plaintiff has no adequate remedy at law.

63.    As a result of the aforesaid infringement regarding the release of *Moana 2*, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to his ownership rights in Plaintiff's copyrighted work. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount well in excess of two-point-five percent (2.5%) of all gross revenue earned by Disney from *Moana 2* the feature film and all products

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS** 24

derived thereof, an exact amount to be proven at trial, which damages are recoverable separate and apart from all other damages inuring in Plaintiff's favor.

<u>**SECOND CAUSE OF ACTION**</u>

**(Continuing Copyright Infringement Under 17 U.S.C. § 106 and § 501 – against All Defendants)**

64.    Plaintiff incorporates paragraphs 1 through 63 of this Complaint as though fully set forth at length.

65.    Defendants' conduct over the past two decades constitutes continuing copyright infringement Pursuant to the Copyright Act, 17 U.S.C. § 106 and § 501, by repeatedly exploiting Plaintiff's Copyrighted Materials without authorization through the creation, distribution, and promotion of *Moana 2* and related derivative works following what has already been admitted by the Defendants to be the transference and receipt of Plaintiff's Copyrighted Materials by the Disney Entities prior to them even beginning to develop *Moana 1* and therefore years before the openly and brazenly infringing *Moana 2.*

66.    Each unauthorized use, distribution, and derivative creation constitutes a separate and distinct act of infringement regardless of any prior order of this Court. This Court lacks the judicial power to prospectively overrule the mandate of 17 U.S.C. § 106(2). Despite this Court's ruling that all Defendants were saved, on statute of limitations grounds only, regarding the 2016 theatrical release of *Moana I*, the Court never was asked to consider in connection with *Woodall v. Disney I* — let alone was the Court asked to attempt to prospectively overrule — Plaintiff's absolute rights pursuant to 17 U.S.C. § 106(2) to control all derivative works of his Copyrighted Material. Defendants' ongoing and repeated violations of Plaintiff's exclusive derivative rights have caused and continue to cause significant harm to Plaintiff.

67.    Defendants' actions reflect a pattern of continuous disregard for Plaintiff's copyright, warranting relief under the Copyright Act.

68.    As a result of Defendants' copyright infringement, Plaintiff is entitled to his actual damages and profits in the sum of more than $10 billion, according to proof either upon entry of summary judgment in Woodall's favor or at trial before a duly impaneled jury.

69.    From the date of first production of Defendants' infringing works, the Defendants have infringed Plaintiff's copyright interests in its copyrighted work, including by: (a) authorizing the reproduction, distribution and sale of the infringing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial illegal use of Plaintiff's copyrighted work alleged in this Complaint.

70.    With knowledge of the aforementioned infringement, each Defendant has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

71.    Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

72.    The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed work and related products.

73.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of Defendants' infringing products, irreparable injury that cannot fully be compensated for or measured in monetary terms; Plaintiff has no adequate remedy at law.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  26

74.     As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's copyrighted work. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount well in excess of two-point-five percent (2.5%) of all gross revenue earned by Disney from Moana the feature film and all products derived thereof, an exact amount to be proven at trial, separate and apart from all damages otherwise recoverable by Plaintiff.

### THIRD CAUSE OF ACTION

**(Willful Copyright Infringement Under 17 U.S.C. § 504(c) – Against All Defendants)**

75.     Plaintiff incorporates paragraphs 1 through 74 of this Complaint as though fully set forth at length.

76.     Defendants' acts of copyright infringement, including the creation and distribution of *Moana 2,* were willful, deliberate, and undertaken with knowledge of Plaintiff's ownership of the Copyrighted Materials and exclusive right to prepare sequels and derivative works. These willful acts were done in part because the Defendants sincerely believe they will never be subject to any substantial judgment in any forum within the Central District of California, thus enhancing their liability.

77.     Defendants' conduct demonstrates an intentional disregard for Plaintiff's exclusive rights under the Copyright Act, as well as a calculated attempt to profit from their unauthorized use of Plaintiff's intellectual property.

78.     Pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to statutory damages for Defendants' willful infringement, in addition to actual damages and Defendants' profits attributable to their infringement.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS  27**

79.    Defendants' actions reflect a pattern of continuous disregard for Plaintiff's copyright, warranting relief under the Copyright Act.

80.    As a result of Defendants' copyright infringement, Plaintiff is entitled to his actual damages and profits in the sum of more than $10 billion, according to proof either upon entry of summary judgment in Woodall's favor or at trial before a duly impaneled jury.

81.    From the date of first production of Defendants' infringing works, the Defendants have infringed Plaintiff's copyright interests in its copyrighted work, including by: (a) authorizing the reproduction, distribution and sale of the infringing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial illegal use of Plaintiff's copyrighted work alleged in this Complaint.

82.    With knowledge of the aforementioned infringement, each Defendant has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

83.    Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

84.    The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed work and related products.

85.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS** 28

Defendants' infringing products, irreparable injury that cannot fully be compensated for or measured in monetary terms; Plaintiff has no adequate remedy at law.

86.    As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's copyrighted work. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount well in excess of two-point-five percent (2.5%) of all gross revenue earned by Disney from Moana the feature film and all products derived thereof, an exact amount to be proven at trial, in addition to all other damages due and owing to Plaintiff.

## **FOURTH CAUSE OF ACTION**

### **(Injunctive Relief for Copyright Violations Under 17 U.S.C. § 502 – Against All Defendants)**

87.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 86 of this Complaint, as though fully set forth herein.

88.    Defendants' ongoing infringement of Plaintiff's Copyrighted Materials, including the development and distribution of *Moana 2* and related derivative works literally right under this Court's nose and violative of multiple discovery orders, poses a continuing threat to Plaintiff's rights under the Copyright Act.

89.    Plaintiff has suffered and will continue to suffer irreparable harm for which monetary damages are insufficient, as Defendants' conduct undermines the integrity of Plaintiff's exclusive rights and diminishes the value of the Copyrighted Materials and represents a disdain for the Copyright Act that is unprecedented in this or any other jurisdiction.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS** 29

90.   Pursuant to 17 U.S.C. § 502, Plaintiff seeks an injunction restraining Defendants, and all persons acting in concert with them, from further use, reproduction, distribution, or exploitation of Plaintiff's Copyrighted Materials, as prayed for herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants as follows:

A.   For a declaration that Defendants have infringed Plaintiff's Copyrighted Materials pursuant to all Causes of Action;

B.   For an award to Plaintiff of compensatory damages against all Defendants, jointly and severally, in an amount exceeding two-point-five percent (2.5%) of the gross revenues appertaining or relating to *Moana* in the sum of at least $5 billion under the First, Second and Third Causes of Action;

C.   For an award of damages in the sum of at least $10 billion, including all profits attributable to Defendants' infringement of Plaintiff's Copyrighted Materials through and following the theatrical release of *Moana 2,* pursuant to the First and Second Causes of Action;

D.   For an accounting of all revenues of any kind generated by the Defendants from each portion of the *Moana* franchise following the theatrical release of *Moana 1,* or alternatively for an accounting of all profits generated from, after or by reason of the theatrical release of *Moana 2* on November 26, 2022, pursuant to the First and Second Causes of Action;

E.   For statutory damages for willful infringement under 17 U.S.C. § 504(c), including enhanced compensatory damages for Defendants' willful conduct in a sum exceeding $10 billion, pursuant to the Third Cause of Action;

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  30

F.  For a temporary, preliminary and permanent injunction restraining and enjoining all Defendants named in this Complaint, as well as their officers, agents, employees, and those persons in active concert or participation with each or any of them, from any further reproduction, distribution, or creation of derivative works based upon or arising from Plaintiff's Copyrighted Materials, pursuant to the Fourth Cause of Action;

G.  For temporary, preliminary and permanent injunction restraining and enjoining all Defendants named in this Complaint, as well as their officers, agents, employees, and those persons in active concert or participation with each or any of them, from directly or indirectly infringing Plaintiff's copyrights, pursuant to the Fourth Cause of Action;

H.  For pre-judgment and post-judgment interest as allowed by law;

I.  For Plaintiff's costs of litigation, including reasonable attorneys' fees, under 17 U.S.C. § 505; and

J.  For such other and further relief as the Court deems just and proper.

///
///
///
///
///
///
///
///
///

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS** 31

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable in this action.

DATED: January 10, 2025          Respectfully Submitted,

YANG LAW OFFICES

SANCHEZ-MEDINA, GONZALEZ,
QUESADA, LAGE, GOMEZ &
MACHADO, LLP

By:    *s/Gustavo D. Lage*
       Gustavo D. Lage
       Lead Counsel
       (*Pro Hac Vice* App to be Filed)
       201 Alhambra Circ, Ste. 1205
       Coral Gables, Florida 33134
       Tel.: (305) 377-1000
       Fax: (786) 304-2214
       glage@smgqlaw.com

       Attorney for Plaintiff Buck
       G. Woodall

**COMPLAINT FOR COPYRIGHT INFRINGEMENT CLAIMS**  32